STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF FORSYTH      14-CVS-5946

KNC TECHNOLOGIES, LLC,

    Plaintiff,

v.      **VERIFIED COMPLAINT**

NITOR SOLUTIONS, INCORPORATED,

    Defendants.

Plaintiff KNC Technologies, LLC ("KNC") (formerly known as Ken-Nect Communications, L.L.C.), by and through the undersigned counsel, hereby files this Verified Complaint against Defendant Nitor Solutions, Incorporated ("Nitor"). In support of its Complaint, KNC alleges as follows:

1. KNC is a North Carolina limited liability company with an office and a principal place of business in Winston-Salem, Forsyth County, North Carolina.

2. Nitor is a North Carolina corporation with an office in Kernersville, Forsyth County, North Carolina and a principal place of business in Clemmons, Forsyth County, North Carolina.

3. This Court has jurisdiction over this matter pursuant to N.C. Gen. Stat. § 1-75.4.

4. Venue is proper in Forsyth County pursuant to N.C. Gen. Stat. § 1-82.

5. KNC is a communications company engaged in the business of preparing the infrastructure for low voltage systems, including, in pertinent part, security cameras, security systems, fire alarms, access control systems, life safety systems, nurse call systems, voice data, and paging systems. KNC provides its clients with a complete physical infrastructure consisting

1

of hardware, wiring, cables and fiber optics, as well as maintenance for all of its infrastructure systems.

6. KNC has expended invaluable time, effort, financial resources, and human capital to obtain and retain licenses and certifications, to develop and protect its confidential and proprietary customer and supplier information and marketing and sales techniques, and to develop and support its customer and supplier relations.

7. KNC takes reasonable and prudent steps to protect its commercially sensitive business information and customer and supplier relations, including requiring its project managers and other high-level employees to sign restrictive covenants that limit their solicitation of customers and disclosure of confidential and proprietary information and maintaining its data on secure servers.

8. Nitor is an information technology ("IT") company that provides network infrastructure support, including switching and routing configuration, server and wireless installation and maintenance, and other networking solutions, and managed IT services that it advertises on its website as offering customers "peace of mind" with the "professional, responsive, and flexible support you expect."

9. On its website, Nitor rhetorically asks its customers and prospective business partners, "How would it feel to know that your network is monitored and managed 24 X 7 X 365 by a local team of networking experts?"

10. In 2009, KNC engaged Nitor to provide KNC with certain network infrastructure and managed IT services, including the network protections it advertises.

11. These managed IT services included, in part, the prevention of improper and unauthorized access to the KNC network.

2

12. As part of this process, Nitor set up and configured the computer systems, servers, and other parts of the KNC network.

13. In conjunction with these network set up and configuration services, Nitor became aware of certain administrator passwords, login credentials, e-mail accounts, and practices for storing commercially sensitive business information at KNC.

14. Pursuant to the services arrangement between Nitor and KNC, Nitor was only permitted to use this information to access the KNC network in order to troubleshoot discrete IT problems reported by KNC and fix errors upon request.

15. In order to perform these tasks for any KNC employee, Nitor was required to obtain authorization from Pam Neuffer, a Manager/Partner at KNC, or the Office Manager.

16. In addition to these limited IT services, Nitor performed a monthly maintenance-related task that entailed cleaning out spam e-mail from the KNC "buffalo drive."

17. In performing this task, Nitor was not provided access to, nor was it authorized to access, the network locations where KNC stores its confidential business information and customer files.

18. Following the set up and configuration of the KNC network, with the exception of these limited IT services as needed and the monthly e-mail maintenance procedure, Nitor did not have access to and was not authorized to access the KNC network or its employees' computers where KNC stores its commercially sensitive business information.

19. In or around November 2013, Nitor approached Eric Tutton ("Tutton"), who was then employed by KNC as a Project Manager, and encouraged him to resign from KNC and work for Nitor in order to develop its low voltage infrastructure business.

3

20. As a Project Manager for KNC, Tutton had extensive knowledge about and managed its customers and suppliers' business needs, pricing for the provision of services, and future plans for the development of its customers' physical infrastructures in the low voltage business.

21. For each of the customer accounts he managed on behalf of KNC, Tutton was responsible for conducting sales, creating estimates, developing project bids, examining and analyzing project designs, and overseeing the progress and budgets of their various infrastructure installation jobs.

22. KNC expends significant efforts to ensure that its trade secrets remain protected through the use of restrictive covenants with its employees, limited access to commercially sensitive information, and special login and password credentials to protect confidential and proprietary information on its network.

23. As a result of his role and responsibilities with KNC, Tutton was subject to a non-disclosure and non-solicitation agreement with KNC that restricted his use and disclosure of its trade secrets, confidential and proprietary information, sales and marketing techniques, and customer and supplier information.

24. Upon information and belief, Tutton made Nitor aware of his non-disclosure and non-solicitation agreement with KNC before his employment with Nitor commenced. A true and accurate copy of an e-mail communication between Tutton and Nitor discussing the non-solicitation agreement between Tutton and KNC is attached as **Exhibit A**.

25. Nitor knew that Tutton served as a Project Manager at KNC when it encouraged him to leave KNC and work for Nitor.

4

26. Upon information and belief, when Nitor recruited Tutton to develop its low voltage business, Nitor was aware that Tutton possessed commercially sensitive information pertaining to KNC, its customers and suppliers, and the ways in which it operated a low voltage infrastructure business.

27. Prior to its recruitment of Tutton, upon information and belief, Nitor did not provide the physical infrastructure installation for low voltage systems like KNC.

28. Upon information and belief, in hiring Tutton, Nitor aimed to develop and expand its low voltage physical infrastructure business and to become a direct competitor of KNC. A true and accurate copy of e-mail communications between Nitor and Tutton relating to his pending employment with Nitor are attached as **Exhibit B**.

29. Nitor further directed Tutton to identify and bring to Nitor various services and products provided by KNC in order to expand its business to provide the same services, including the installation of physical infrastructures for low voltage systems such as security cameras, security systems, access control, fire alarms, and voice data systems. A true and accurate copy of e-mail communications between Tutton and Nitor relating to the expansion of its business to include the same services offered by KNC is attached as **Exhibit C.**

30. Upon information and belief, Nitor knew that Tutton was delaying the issuance of quotes for multiple KNC customers while he remained employed by KNC as a means to transition the customers' business to Nitor.

31. In the course of its recruitment of Tutton, upon information and belief, Nitor coordinated with Tutton to secretly access the KNC network and misappropriate confidential and proprietary information related to its low voltage business, customers, and suppliers. A true and accurate copy of the e-mail communications between Tutton and Nitor relating to this illegal

download and retrieval of confidential customer and supplier information is attached hereto as **Exhibit D.**

32. Upon information and belief, Nitor facilitated the misappropriation of thousands of customer and supplier files from the KNC server, computer system, and/or network, which contained the identification of nearly 150 customers and suppliers as well as their project bids, designs, infrastructure plans, and pricing estimates from KNC for services rendered by KNC.

33. Upon information and belief, Nitor breached its IT services arrangement with KNC by accessing the KNC network without authorization in order to misappropriate its commercially sensitive information for the purpose of developing a competing business.

34. Upon information and belief, Nitor used the login credentials and system configuration information it had obtained from KNC for the sole purpose of providing IT support services as a means to access the KNC network without authorization for improper purposes.

35. Following the illegal download and retrieval of confidential information from KNC, Nitor hired Tutton to manage its low voltage infrastructure business in a role similar to that which he held at KNC.

36. Following the illegal download and retrieval of confidential information from KNC, Nitor sent proposals to and provided services for multiple KNC customers.

37. Upon information and belief, one of these projects entailed Nitor and Tutton completing services that KNC had been performing for the customer while Tutton was employed by KNC.

38. As a result of the solicitations and competitive services by Nitor, KNC has suffered a loss of business and customer relations.

39. Upon information and belief, Nitor continues to utilize the commercially sensitive business information that it misappropriated from KNC for its own benefit.

40. Upon information and belief, specifically and without limitation:

   a. Nitor continues to solicit and perform services for customers and suppliers of KNC, whose identities and business needs are only known to Nitor by virtue of its recruitment of Tutton and its misappropriation of trade secrets, and Nitor seeks to have those customers and suppliers transfer their business from KNC to Nitor;

   b. Nitor is improperly using data and information it misappropriated from KNC; and

   c. Nitor has actively sought to interfere with KNC and its employee, customer, and supplier relations on multiple occasions, damaging and/or causing them to terminate their engagement with KNC.

41. KNC has incurred significant costs investigating the extent of the data breach Nitor created and the volume and types of commercially sensitive information Nitor misappropriated in the process.

42. As a result of the unlawful actions of Nitor, sales for KNC have decreased, business has been interrupted, and KNC has incurred damages remediating its conduct.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS

43. KNC repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

44. KNC took reasonable and prudent steps to maintain the confidentiality of certain proprietary information associated with its business, by requiring its employees to sign nondisclosure covenants, utilizing special login and password credentials to access sensitive

7

information, and limiting access to the KNC network and/or confidential business information to only as needed and when authorized.

45. Nitor, by virtue of its IT support relationship with KNC, understood that the KNC network, server, and computers contained confidential and proprietary information, and that it was not permitted to access the server without prior authorization or for improper purposes.

46. In violation of the Trade Secrets Protection Act, Nitor misappropriated, used, and retained confidential, proprietary, and trade secret information from KNC without its authorization and for the purpose of benefiting Nitor business to the detriment of KNC.

47. As a result of the harm Nitor has caused KNC, KNC is entitled to an enjoin Nitor from its continued use and retention of the trade secrets its unlawfully obtained from KNC, as well as actual and punitive damages in an amount to be determined at trial.

## COUNT II
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

48. KNC repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

49. Nitor is illegally competing with KNC by maliciously and unjustifiably interfering with its customer relationships, current and prospective business, and its ability to conduct business free from unfair competition.

50. KNC has been damaged by Nitor's interference with its customer relationships and prospective economic advantage in an amount to be determined through discovery.

51. Nitor's conduct has been carried out maliciously, willfully, and wantonly, and with a conscious and intentional, or in the alternative, reckless disregard for the rights of KNC.

52. Nitor is liable to KNC for an amount to be determined at trial, which amount is expected to be in excess of $25,000.00.

## COUNT III
## CONVERSION

53. KNC repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

54. KNC is the author and owner of the confidential, proprietary, and trade secret information that Nitor unlawfully removed from the KNC premises for the benefit of Nitor.

55. Nitor has exercised dominion and control over the confidential, proprietary, and trade secret information owned by KNC as more fully set forth herein.

56. Nitor's conduct constitutes an unauthorized assumption and exercise of a right of ownership over property belonging to KNC to its exclusion and detriment.

57. KNC has been damaged by Nitor's conversion of its property in an amount to be determined at trial, which amount is expected to be in excess of $25,000.00.

## COUNT IV
## PUNITIVE DAMAGES

58. KNC repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

59. KNC is entitled to an award of punitive damages because Nitor's conduct described hereinabove has been carried out in a malicious, willful, and wanton manner, and with a conscious and intentional, or in the alternative, reckless disregard for the rights of KNC.

## COUNT V
## UNFAIR AND DECEPTIVE TRADE PRACTICES

60. KNC repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

61. Nitor's conduct described hereinabove is in and affecting commerce.

62. Nitor's actions in (a) interfering with KNC's customer contracts, accounts, and business, (b) misappropriating and using KNC's confidential, proprietary, and trade secret information, (c) illegally accessing and downloading confidential customer and supplier information from the KNC network, servers, and/or computers, and (d) conspiring to keep Nitor's recruitment, negotiations, and engagement of Tutton secret as a means to utilize KNC's customer and supplier information for Nitor's benefit constitute unfair and deceptive trade practices.

63. Nitor's conduct has damaged KNC, and Nitor is liable to KNC for its actual damages, treble damages, and attorneys' fees under North Carolina General Statute § 75-1 *et. seq.*

## COUNT VI
## COMPUTER FRAUD PURSUANT TO 18 U.S.C. § 1030(a)(2), (a)(4)

64. KNC repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

65. The network and/or computers containing the commercially sensitive information described hereinabove are owned and controlled by KNC, used in interstate or foreign commerce, and used in a manner that affects interstate and foreign commerce.

66. Nitor intentionally accessed KNC's network and/or computers without authorization and/or in a manner that exceeded its authorization and thereby obtained confidential and proprietary information from KNC's network and/or computers.

67. Nitor, knowingly and with the intent to defraud, accessed KNC's network and/or computers without authorization and/or in a manner that exceeded its authorization and engaged in the unlawful conduct described hereinabove.

68. Nitor engaged in the above conduct to further its solicitation and improper acquisition of KNC's customer and supplier information in order to develop and expand its low voltage infrastructure business.

69. As a result of Nitor's conduct, KNC has suffered a loss in excess of $5,000 within a one-year period.

70. KNC has been damaged by Nitor's conduct in an amount to be determined at trial.

## COUNT VII
## MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS

71. KNC repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

72. Nitor's actions threaten KNC with irreparable harm if it is not enjoined from continuing to solicit KNC's customers, suppliers, and employees through the use of KNC's trade secret, confidential, and proprietary information.

73. Upon information and belief, Nitor would not have any knowledge or access to the relationships with KNC's customers and suppliers but for Nitor's recruitment and engagement of Tutton and its misappropriation of KNC's trade secrets.

74. Upon information and belief, Nitor continues to provide services to KNC customers, whose account information Nitor unlawfully obtained through its employment of Tutton and through the illegal downloading and retrieval of information from KNC's network and/or computers.

75. Nitor's actions threaten KNC with irreparable harm if it is allowed to continue to retain KNC's commercially sensitive information and use it to court KNC's customers, suppliers, and employees, which Nitor knows about only because of its unjust and unfair acts as described hereinabove.

11

76. In order to preserve the status quo and to protect and preserve the rights of KNC, a permanent injunction should be issued restraining Nitor from continuing the following conduct:

- Using, disclosing, and/or keeping KNC's trade secret, confidential, and proprietary information;
- Using, disclosing, and/or keeping any information downloaded from KNC's servers, computers, and/or system;
- Soliciting, contacting, and making sales to KNC's customers, suppliers, and employees through the use of its commercially sensitive information;
- Providing services in the low voltage physical infrastructure business; and
- Otherwise unlawfully competing with KNC.

77. In order to assess the breadth of the trade secret, confidential, and proprietary information misappropriated, Nitor should be further ordered to provide KNC with a complete accounting of the KNC customers and accounts that Nitor has solicited, to which it has provided proposals or services, and/or from which it has received any profits since its engagement of Tutton.

WHEREFORE, KNC prays the Court as follows:

1. For a preliminary and permanent injunction against Nitor as set forth above;

2. For judgment against Nitor with general, incidental, consequential, and punitive damages as allowed by law;

3. For the damages award to be trebled pursuant to N.C. Gen. Stat. § 75-16;

4. For an award of KNC's attorneys' fees and costs incurred in prosecuting this action as permitted by law;

5. For an award of pre-judgment and post-judgment interest;

6. For a trial by jury as to all issues so triable; and

7. For an award of such other and further relief as this Court may deem just and proper.

This the 26 day of September 2014

KNC TECHNOLOGIES, LLC

By: Spilman Thomas & Battle, PLLC

_____
Jeffrey D. Patton
N.C. State Bar No. 21246
Erin Jones Adams
N.C. State Bar No. 36858
110 Oakwood Drive, Suite 500
Winston-Salem, NC 27103
Telephone: (336) 725-4710
Facsimile: (336) 725-4476

13

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF FORSYTH                     14-CVS-____

KNC TECHNOLOGIES, LLC,

    Plaintiff,

    v.                                    **VERIFICATION**

NITOR SOLUTIONS, INCORPORATED,

    Defendants.

Affiant, Pam Neuffer, being first duly sworn, deposes and says:

That she is the Manager/Partner of Plaintiff in this action; that she has read the foregoing **VERIFIED COMPLAINT** and knows the contents thereof; and that the same is true of her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, she believes them to be true.

This the 25 day of Sept 2014

_____
Pam Neuffer, Affiant

NORTH CAROLINA
FORSYTH COUNTY

Sworn to and subscribed before me this day by _____.

Date: 9/25/14

_____
Notary Public    Etiska R. Goolsby
My Commission Expires: 3/21/15

(Official Seal)
Notary Public
Etiska R Goolsby
County of Forsyth, NC
My Commission Expires 3/21/15

1